MID COUNTY RENTAL SERVICE,
INC., et al., Appellants,

v.

MINER–DEDERICK CONSTRUCTION
CORP., Appellee.

No. 8174.

Court of Civil Appeals of Texas,
Beaumont.

Feb. 8, 1979.

Rehearing Denied April 5, 1979.

John L. Fulbright, Beaumont, for appellants.

Robert Q. Keith, Beaumont, for appellee.

CLAYTON, Justice.

Appellee, Miner-Dederick Construction Corporation (defendant and cross-plaintiff below) was the general or prime contractor to construct a library building and certain related works for the Lamar University in Beaumont, Texas. Appellee entered into three separate subcontracts with appellants, Mid-County Rental Service, Inc. and Alton M. Stewart (plaintiffs and cross-defendants below) relating to certain portions of the work. Appellants filed suit against appellee to recover for "extras," attorney fees and the balance due under the three subcontracts. Appellee answered and filed a cross-action and also sued United States Fidelity & Guaranty Company (USF&G) upon the performance bond and payment bond executed by it as surety. The cross-action filed by appellee against appellants was based upon a breach of the three subcontracts and sought damages for the amount appellee was required to expend to complete the work called for by the subcontracts.

A jury trial resulted in findings to special issues that appellants did not substantially perform subcontracts one and three; that appellants performed "extras" the value of which was $2,090.64; that $700 was reasonable attorney fees; that appellants breached the subcontracts in question; that appellants willfully, intentionally, "or" in bad faith failed to substantially perform the contracts in question; that appellee "was damaged" because of such breach of contract; that the amount of damages for such breach was "none" as to each contract; and that the appellee was obligated to pay to persons who furnished labor or materials for use by appellants on the contracts the amount of $10,000.

The appellants' "Motion for Judgment" and to disregard answers to certain special issues was overruled by the trial court, and judgment was entered for appellee and against appellants and USF&G, jointly and severally, for $7,203.36. The amount of the judgment was apparently determined by deducting the amount of extras and attorney fees found by the jury in favor of

appellants from the amount found in favor of appellee. From this judgment appellants and USF&G have appealed.

Appellants and USF&G urge "no evidence" points as to the trial court's action in overruling its motion to disregard the jury's answer to Special Issue No. 10 and in rendering judgment for appellee based thereon.

In deciding a "no evidence" question, we must consider only the evidence and the inferences tending to support the findings and disregard all evidence and inferences to the contrary. *Lucas v. Hartford Accident & Indemnity Co.,* 552 S.W.2d 796, 797 (Tex.1977); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965).

Special Issue No. 10 inquired of the jury the reasonable sum of money appellee "paid or became obligated to pay" to persons and firms who furnished labor and materials for use by appellants on the contracts in question, and in response thereto the jury answered $10,000. We construe the words "became obligated to pay" to be equivalent to "legally obligated to pay." To make a determination of the money which appellee became legally obligated to pay we must review the transactions conducted between all the parties.

Appellee was the general contractor for the construction of a library building for Lamar University, which was a "public works" contract within the meaning of *Tex. Rev.Civ.Stat.Ann. art. 5160* (Vernon 1971 and Supp.1978). Appellee entered into three separate subcontracts with appellants to perform certain work. Under each subcontract appellants furnished a performance bond and a payment bond, with USF&G as sureties thereon. Each performance bond and payment bond, in addition to the general terms, expressly provides:

"PROVIDED, HOWEVER, that this bond is executed pursuant to the provisions of Article 5160 of the Revised Civil Statutes of Texas . . . and all liabilities on this bond shall be determined in accordance with the provisions of said article to the same extent as if it were copied at length herein."

Unquestionably, the provisions of *Article 5160* were incorporated into and made a part of the bonds, and the bonds expressly state that all liabilities on each bond "shall be determined in accordance with the provisions of art. 5160."

The question before us is whether or not the $10,000 as found by the jury constituted a legal obligation or liability on the part of appellee. It is undisputed that appellants owed the aggregate sum of $10,000 to three suppliers for materials furnished and labor performed in connection with the work to be done by appellants pursuant to their contract with appellee. It is further undisputed that the claims of the suppliers were not paid by appellants. Appellee urges that it was legally obligated to pay the suppliers for the amount due them by appellants, and therefore appellee was entitled to recover from appellants such sums. It is undisputed that the suppliers did not timely give appellee notice of their claims pursuant to the provision of *art. 5160.* Appellee argues the notice requirements of *art. 5160* are not necessary, but, if such notices are required, then there was a substantial compliance with the notice requirements of *art. 5160.*

The provisions of *art. 5160* are applicable to the establishment of liability on the part of the general contractor as well as to liability on the part of the surety on its payment bond and performance bond. The statute provides the procedure and remedy for presenting a claim. It has been held that the statute is mandatory as well as exclusive; that it must be complied with in all respects or a cause of action under it is not maintainable. Therefore, a claimant must follow the procedures provided therein. *Employers' Liability Assurance Corp. v. Young County Lumber Co.,* 122 Tex. 647, 64 S.W.2d 339 (1933); *Fidelity & Deposit Co. v. Big Three Welding Equipment Co.,* 151 Tex. 278, 249 S.W.2d 183 (1952); *Bunch Electric Co. v. Tex-Craft Builders, Inc.,* 480 S.W.2d 42 (Tex.Civ.App.—Tyler 1972, no writ). As stated by the court in *Bunch Electric Co. v. Tex-Craft Builders, Inc.,* supra: "The requirement of notice . . . is not a

mere statute of limitation, but is a substantive condition precedent to the existence of the cause of action," citing *General Casualty Co. of America v. United States,* 205 F.2d 753, 755 (5th Cir. 1953). It is undisputed that the suppliers in the case at bar did not have a direct contractual relationship with a prime contractor. It is clearly held in *Keetch Metal Works of Dallas, Inc. v. Yates,* 378 S.W.2d 122 (Tex.Civ.App.—Dallas 1964, no writ), that ". . . a claimant [supplier] who does not have any direct contractual relationship with a prime contractor must give to the prime contractor the notices provided in . . . *Art. 5160* . . . as a condition precedent to the enforcement of liability of the prime contractor and his surety."

■ Strict compliance with the requirements of *art. 5160* is essential to recovery. *Barfield v. Henderson,* 471 S.W.2d 633 (Tex. Civ.App.—Corpus Christi 1971, writ ref'd n. r. e.); *Union Indemnity Co. v. Rockwell,* 57 S.W.2d 90 (Tex.Comm'n of App.1933, judgmt adopted); *United Tile Co. v. Kermit Independent School District,* 273 S.W.2d 434 (Tex.Civ.App.—El Paso 1954, writ ref'd n. r. e.); *Gulf Oil Corp. v. Austin Contracting Co.,* 326 S.W.2d 925 (Tex.Civ.App.—Eastland 1959, writ ref'd n. r. e.).

Appellee argues that substantial compliance with *art. 5160* is sufficient with respect to the timely filing of claims. In the cases cited by appellee to support this argument, we note that such cases recognize that the required notices were timely given and that there had been a substantial compliance with the contents of such required notices. With reference to the time within which to file the required notices, the law is correctly stated in *Bunch Electric Co. v. Tex-Craft Builders, Inc.,* supra, as follows: ". . . appellant had the burden of proving that notice had been given by certified or registered mail as provided by the statute or by showing substantial compliance by proving actual notice within the [required time] period. [Citing cases.]" In the case at bar, appellee has not discharged this burden in proving either element.

■ Appellee further argues that the statutory notice requirements can and have been waived by appellee, the general contractor. We find nothing in the record before us to prove such a waiver when applied to the required elements of waiver as enunciated in *General Insurance Co. of America v. Smith & Wardroup, Inc.,* 388 S.W.2d 262, 264 (Tex.Civ.App.—Amarillo 1965, writ ref'd n. r. e.), citing *Kuehne v. Denson,* 148 Tex. 54, 219 S.W.2d 1006 (1949).

It is being undisputed that the suppliers failed to give the required notices in accordance with the requirements of *art. 5160,* they therefore failed to perfect or establish any valid or enforceable claim on the payment bond furnished by USF&G, as surety, or against appellee as general contractor. Accordingly the appellee was not under any legal obligation or liability to pay the accounts of the suppliers. Appellee having no legal obligation to pay such accounts, then the jury finding in Special Issue No. 10 cannot stand, and the appellants' motion to disregard the answer to such Issue No. 10 should have been granted by the trial court.

■ Appellee argues that *Tex.Rev.Civ. Stat.Ann. art. 5160* (Vernon 1971 and Supp. 1978) does not apply to the performance bond, and therefore it should be entitled to recover the $10,000 due appellants' suppliers. If appellee's cause of action is based upon the performance bond, the damages sought by appellee would necessarily be based upon the breach of contract on the part of appellants, such damages being the amount expended by appellee in completing the contract. Special issues were submitted to and answered by the jury with reference to such breach of contract. The jury answered the damage issues to the effect that appellee sustained "no damages" as a result of any breach. Under these findings, appellee is precluded from recovering any element of damages as to any such breach of contract against the surety on the performance bond.

■ Appellants complain in their fourth point that the trial court erred in overruling their motion for judgment and in failing to

enter judgment for them in the amount of $26,874.28 plus prejudgment interest. Appellee has admitted that it owes appellants, in connection with their subcontract No. 3 the sum of $19,936.45 as balance due upon such contract. Appellee further admits that the sum of $4,141.23 was due appellants for "unpaid approved extras." The jury found the amount of $2,096.60 was due appellants for extras provided, and no challenge or attack is made by appellee upon this sum of $2,096.60. The jury found and awarded appellants the sum of $700 as attorney fees.

Appellee argues that the $19,936.45 due on its contract No. 3 with appellants was considered by the jury in its answer to Special Issue No. 9. Special Issue No. 9 inquired of the jury the "difference . . between the contract price and the fair and reasonable sum of money (including the money paid to [appellants]) required by an ordinary prudent contractor . . . to complete the contracts. . . ." In response to this issue the jury answered, "None" as to "Contract No. 1, Contract No. 2, and Contract No. 3." Appellee argues that "if the jury, in answering Special Issue No. 9, offset the amount owed to [appellants] against the damages suffered by [appellee], the trial court was not in error in overruling appellants' Motion for Judgment and in refusing to charge $19,936.45 against [appellee]." The argument is made that the jury considered all three subcontracts as one and considered the element of damages as to the three contracts as one contract, and that in so considering the three contracts as one, the jury considered the $19,936.45 as an offset against the amount owed appellants.

Special Issue No. 9 inquired as to damages sustained as the result of the breach of each specific contract referring to each by number. The jury answered, "None" as to contracts No. 1, No. 2, and No. 3. The instructions given in connection with Issue No. 9 as to the elements of damages to be considered by the jury did not and could not have been construed to encompass any amount owed by appellee. We must assume the jury followed the instructions of the court. In order to hold that the jury considered the $19,936.45 in the sense of an offset, would require us to speculate and, upon pure conjecture, delve into the mental process of the minds of the jurors and to determine the items which the jury may or may not have considered. We cannot, and refuse to, become engaged in such a task of determining the mental gymnastics of the jury as to how and why it answered "None" to Issue No. 9.

In view of the jury findings as to extras in the sum of $2,096.60 and appellee's admissions in owing $4,141.23 as extras and the sum of $19,936.45 as being due appellants under contract No. 3, the trial court should have awarded judgment for appellants in the aggregate sums of the three items, in the total sum of $26,174.28. The $700 attorney fees awarded appellants is not challenged and was properly awarded to appellants.

■ Appellants state in their brief that it is "undisputed that the entire job was completed on March 6, 1976. Therefore, interest at 6 percent per annum on the balance admittedly due under contract No. 3, $19,-936.65, from March 6, 1976 to March 1, 1978, would be $2,392.97." This statement, as shown by the record, has not been challenged. It has long been a settled rule that, where damages are established as of a definite time and the amount thereof definitely determinable, interest is recoverable as a matter of right from the date of the injury loss. *Black Lake Pipe Line Co. v. Union Construction Co.,* 538 S.W.2d 80, 95–96 (Tex.1976). The trial court should have awarded to appellants the sum of $2,392.97 as prejudgment interest.

Appellants next complain of error by the trial court in refusing to award attorney fees for appeals to the appellate courts. The jury in response to Special Issue No. 5 answered "0" as to attorney fees for an appeal to the Court of Civil Appeals and "0" for application to the Supreme Court for writ of error. The trial court refused to award any amount in its judgment for such appeal.

A trial court, in its discretion, may allow a fee to an attorney for an appeal, but is not required to do so. *Olivares v. Porter Poultry & Egg Co.,* 523 S.W.2d 726 (Tex.Civ.App.—San Antonio 1975, no writ); *Bernard v. Bernard,* 491 S.W.2d 222 (Tex. Civ.App.—Houston [1st Dist.] 1973, no writ); *Schwartz v. Jacob,* 394 S.W.2d 15 (Tex.Civ.App.—Houston 1965, writ ref'd n. r. e.). This point is overruled.

By cross-point appellee urges the jury's answer to Special Issue No. 9 is so against the great weight and preponderance of the evidence as to be manifestly unjust. Issue No. 9 concerned damages incurred by appellee in completing the three subcontracts involved herein. The jury answered "None" to all three contracts. Appellants filed their motion to strike the cross-point as not being properly presented on appeal. Assuming, without deciding the cross-point is properly raised and presented, we overrule the same as being without merit. The record shows that the trial court entered its formal order stating, inter alia, "that the motion of [appellee] for judgment on the verdict should be granted in its favor for $7,203.36. . . ." Having filed a motion for judgment (as was clearly shown by the court's order), appellee is in no position to question the sufficiency of the evidence. A motion for judgment on the verdict is an affirmation that the findings of the jury are supported by competent evidence. *Skeen v. State,* 550 S.W.2d 713 (Tex.Civ.App.—El Paso 1977, no writ); *Wilson v. Burleson,* 358 S.W.2d 751, 753 (Tex. Civ.App.—Waco 1962, writ ref'd n. r. e.).

For the errors noted above, the judgment of the trial court is reversed, and we now render the judgment which should have been rendered by the trial court: that appellee take nothing by its cross-action and that appellants have judgment against appellee in the sum of $28,567.25, plus $700 for attorney fees.

REVERSED and RENDERED.